UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MICHAEL K. BROWN,

    Plaintiff,

v.                                                                      Case No. 18-CV-1653

KURT PICKNELL, KEVIN WILLIAMS,
JOHN DELANEY, J. S. SAWYERS,
S. SAX, SGT. SAULTELL,
SGT. CRAIG, CO BARDECKI,
CO SCHMIDT, and CO PHILLIPS,

    Defendants.

## ORDER

Plaintiff Michael K. Brown, a Wisconsin state prisoner, filed this civil rights case alleging that the defendants subjected him to unconstitutional conditions of confinement when he was confined at the Walworth County Jail. He alleges that his "living area, eating area, sleeping quarters, and bathing/shower area contain mold, mildew, moss on the walls, dead flies, bugs, overhead dirt in the eating area, the ventilation system, overhead lighting and ceiling tiles, at times falling onto the tables and food trays." (ECF No. 1 at 2-3.) Brown also alleges that he (and the former plaintiffs[1]) asked the defendants to address these issues so as not to be exposed to "harmful agents[.]" (*Id.* at 3.) The defendants have filed a motion for summary

---

[1] Brown originally filed the complaint along with three other inmates.

judgment (ECF No. 58) as has Brown (ECF No. 73). The motions are ready for resolution.

The parties have consented to United States magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and General Local Rule 73 (E.D. Wis.).

### THE PARTIES' SUMMARY JUDGMENT SUBMISSIONS

After extending the dispositive motion deadline several times, the court ultimately set the deadline at February 7, 2020. (ECF No. 56.) The defendants timely filed their summary judgment motion on that date. (ECF No. 58.) Brown filed a combined response to defendants' motion for summary judgment and his own motion for summary judgment on April 28, 2020. (ECF No. 73.) On April 30, 2020, the court accepted Brown's untimely motion for summary judgment, ordered that the defendants' reply in support of their motion for summary judgment and their response to Brown's motion for summary judgment were due on July 17, 2020, and ordered that Brown's reply in support of his motion for summary judgment was due on July 31, 2020. (ECF No. 74.) The defendants timely filed their summary judgment reply and their response to Brown's summary judgment motion. (ECF No. 76.) Brown filed a motion for extension of time to file his reply in support of his motion for summary judgment, which the court granted in part, thereby extending his reply deadline from July 31, 2020 to August 31, 2020. (ECF Nos. 75, 79.)

On August 28, 2020, Brown filed a combined reply brief in support of his motion for summary judgment and brief in opposition to the defendants' motion for summary judgment. (ECF No. 80.) He also filed 86 pages of exhibits, proposed findings of fact

2

in support of his motion for summary judgment, and a response to the defendants' proposed findings of fact. (ECF Nos. 80-2, 81, 82.)

The court will accept Brown's reply brief. The court will not consider Brown's other August 28, 2020 submissions because it did not grant him leave to file additional materials in response to the defendants' summary judgment motion or in support of his own motion. *See* Civ. L. R. 7(i)(E.D. Wis.) ("Any paper, including any motion, memorandum, or brief, not authorized by the Federal Rules of Civil Procedure, these Local Rules, or a Court order must be filed as an attachment to a motion requesting leave to file it."); *see also* Civ. L.R. 56(b) (E.D. Wis.).

## FACTUAL BACKGROUND

This section is taken from the Defendants' Proposed Findings of Fact. (ECF No. 60.) Because Brown did not timely respond to the defendants' proposed findings of fact, they are undisputed for purposes of summary judgment. *See* Civil L.R. 56(b)(4) (E.D. Wis.).

### A. Brown's Detention and Day Room Facilities at the Walworth County Jail

Brown was booked at the Walworth County Jail on July 13, 2018, on charges stemming from Walworth County Case Numbers 18-CF-347 and 18-CF-371. (ECF No. 60, ¶ 5.) Brown entered a guilty plea on both cases on November 13, 2018. (*Id.,* ¶ 6.) He was transferred out of the jail on January 24, 2019. (*Id.,* ¶ 7.)

Brown was primarily housed in the B Pod at the jail. (ECF No. 60, ¶ 8.) The B Pod consists of a day room that is about 3,850 square feet, a gym/exercise area, forty-

3

eight single-occupant cells, six showers, and one general use toilet. (*Id.*, ¶ 9.) The single-occupant cells in the B Pod are each about sixty-four square feet and each contain a door, a window, a raised bed, a small writing desk, and a porcelain toilet/sink combination with a mirror mounted above the sink. (*Id.*, ¶ 10.)

Inmates in the B Pod eat their meals in the day room. (ECF No. 60, ¶ 12.) Tables are cleaned and sanitized following every meal and also every night at 10:00 p.m. (*Id.*, ¶ 13. Inmates may also clean the tables by using cleaning supplies that are available every day until 3:00 p.m. or by requesting cleaning supplies from the correctional officer on duty. (*Id.*)

**B. Walworth County Jail Policies and Procedures**

  1. *Inmate Grievance Policy*

When Brown was confined at the jail the inmate complaint policy directed inmates to file complaints (sometimes referred to as "grievances") in a kiosk located in their pod that was available to inmates during all times except during lockdown. (ECF No. 60, ¶¶ 16-17.) Inmates had their own account on the kiosk. (*Id.*, ¶ 18.) Inmates could log into the kiosk using their own account and type their complaint, which is sent to supervisory staff for resolution within seven days. (*Id.*, ¶¶ 18-19.) The inmate could log back into the kiosk to receive the response. (*Id.*, ¶ 20.)

  2. *Jail Cleaning Policies for Inmates and Inmate Workers*

Jail inmates have a responsibility to maintain a clean environment. (ECF No. 60, ¶ 21.) Cleaning supplies provided to inmates included a mop-bucket with cleaning solution, mop, ringer, broom, cleaning solutions in three bottles (sanitizer, bathroom

cleaner, and glass cleaner), a "toilet bucket" (standard bucket with toilet bowl brush and liquid toilet cleaner), and rags for using the cleaning solutions. (*Id.,* ¶ 22.) These supplies were left out until 3:00 p.m., but inmates could request the cleaning supplies at any time from a correctional officer. (*Id.,* ¶ 23.)

Inmates were required to have their bunks and cells clean each morning for inspection. (ECF No. 60, ¶ 24.) At about 9:00 a.m., officers conducted an inspection of all inmate cells for cleanliness. (*Id.,* ¶ 25.) Cell inspection included review of the following: (1) the bed is made properly; (2) all items are properly stored in the inmate's footlocker; (3) the cell is generally clean, including the vents, toilet and sink, and window sill; (4) the sprinkler is undamaged or has no new damage; and (5) garbage has been emptied. (*Id.,* ¶ 26.) Once inspection was completed, inmates who met the inspection standard were released to daily activities. (*Id.,* ¶ 27.)

In addition to inmates cleaning their individual living quarters, inmate workers were assigned to clean the common areas of the jail. (ECF No. 60, ¶ 29.) At about 10:00 p.m. a correctional officer locked down all pods except for designated inmate workers, who then cleaned the common areas. (*Id.,* ¶ 31.) Nightly cleaning by these Inmate Workers included: dust mopping or wet mopping all tiled areas, vacuuming all carpeted areas, and cleaning and wiping down all tables, showers, common toilets, common doors, common windows, inmate telephones, kiosks, and the gym. (*Id.,* ¶ 32.) Inmate workers also cleaned the common eating area by wiping down tables, chairs, and the floor after every meal. (*Id.,* ¶ 33.)

5

*3. Jail Repair, Outside Servicer Policies, and Inspections*

If jail staff observe any damaged or non-functioning areas that need repair, they are required to contact the sergeant on duty with a description of the repair issue. (ECF No. 60, ¶ 34.) Additionally, if jail staff observe any vermin and/or pests, they are required to immediately notify the sergeant on duty. (*Id.,* ¶ 35.) The sergeant then makes an entry on the "pest control book" located in Central Records. (*Id.,* ¶ 36.) If the pest control requires immediate attention, the sergeant or jail administration will report to a member of facilities staff to correct the problem. (*Id.,* ¶ 37.)

A report for maintenance and/or pest control is directed to the maintenance department, which determines whether maintenance and/or pest control can be conducted by maintenance staff or whether an outside servicer should be contacted. (ECF No. 60, ¶ 38.) The jail contracts with Airmark for clean-up of any hazardous materials, including blood and feces. (*Id.,* ¶ 39.) The jail also contracts with Wil-kil Pest Control for pest control management within the jail. (*Id.,* ¶ 40.) Employees of Wil-kil come to the jail every two weeks to determine whether any pest control requests have been placed by the jail. (*Id.,* ¶ 41.) Finally, Walworth County contracts with Balestrieri Group for any concern regarding mold or other abatement procedures and for air quality testing. (*Id.,* ¶ 42.)

The air system at the jail is maintained bi-annually. (ECF No. 60, ¶ 43.) All supply and return vents are cleaned bi-annually or as needed. (*Id.,* ¶ 44.) This includes replacing the pre-filter and filter and cleaning the interior of the housing for each of the jail's twenty-eight filtration units. (*Id.,* ¶ 45.)

6

The jail is also inspected annually by the Wisconsin Office of Detentions. (ECF No. 60, ¶ 46.) During the times that Brown was housed in the jail, the jail passed its inspection and did not have any negative feedback with respect to the issues of which Brown now complains. (*Id.,* ¶ 47; ECF No. 61-5, Exhibit E, Walworth County Jail 2018 Annual Inspection Report Letter; ECF No. 61-6, Exhibit F, Walworth County Jail 2019 Annual Inspection Report Letter.)

C. **Brown's Complaints Regarding the Jail**

   *1. Brown's Claims Regarding Moss, Mildew, and Mold – Showers and Sleeping Area*

Brown alleges that moss, mildew and mold were found in the showers - on the lighting, the walls, and on the ceiling. (ECF No. 60, ¶ 49.) He also alleges that a small amount of mold could be seen under the sink in his sleeping area. (*Id.,* ¶ 50.) Brown has not had these substances tested to determine if, in fact, they were moss, mildew, or mold nor does he have photographic evidence of the moss, mildew, or mold. (*Id.,* ¶ 51.) Brown acknowledges that the alleged moss appeared to be in one particular shower and that, if and when this occurred, he was usually able to avoid using that particular shower. (*Id.,* ¶ 52.) He described the mold and mildew as "shower scum and mildew buildup." (*Id.,* ¶ 53.) The day room and Brown's sleeping quarters were generally free of such substances. (*Id.,* ¶ 54.)

Brown has never been told by a medical professional that he was diagnosed with an illness or injury attributable to any alleged moss, mildew, or mold in the jail. (ECF No. 60, ¶ 55.) When asked to describe any alleged psychological impact that he

attributes to the alleged moss, mildew, or mold in the jail, Brown responded: "I think it's – makes you want to clean." (*Id.,* ¶ 56.)

2. *Brown's Claims Regarding Bugs and Dirt – Day Room and Common Areas*

Brown alleges that there were dead bugs in the light fixtures, on the windowsills, and sometimes near the drains at the jail. (ECF No. 60, ¶ 58.) Brown admits that he has seen similar conditions outside of his incarceration. (*Id.,* ¶ 59.) Brown has never been told by a medical professional that he was diagnosed with an illness or injury attributable to bugs in the jail. (*Id.,* ¶ 60.)

Brown alleges there was dirt in the vents and the ceiling tiles and that the ceiling tiles were discolored. (ECF No. 60, ¶ 62.) He admits that he has no knowledge of the jail's ventilation system. (*Id.,* ¶ 63.) Brown also admits that he was allowed to sweep the floors, wipe down fixtures, and otherwise clean the alleged dirt. (*Id.,* ¶ 64.) Brown has never been told by a medical professional that he was diagnosed with an illness or injury attributable to any alleged dirt in the jail. (*Id.,* ¶ 65.)

3. *Brown's Complaints to the Individual Defendants*

Brown did not speak personally to Sheriff Picknell, K. Williams, John Delaney, or J.S. Sawyers and has no proof that any of these individuals knew of his complaints before he filed this lawsuit.[2] (ECF No. 60, ¶ 66.) Brown included them in this lawsuit

---

[2] Brown believes that on one occasion he may have spoken to Delaney or J.S. Sawyers in his Pod when a group came in to look at new telephones, and that Brown mentioned that things were not clean; however, Brown cannot recall exactly what he said nor does he know the individual to whom he was speaking. (ECF No. 60, ¶ 67.) The individual told Brown that he was free to clean anything in the jail. (*Id.,* ¶ 68.)

8

because he learned that they represent the jail's administration. (*Id.,* ¶ 69.) Brown did not speak personally with S. Sax or Sergeant Craig about his complaints and has no proof that they knew of his complaints before he filed this lawsuit. (*Id.,* ¶ 70.)

Brown may have complained to Sergeant Saultell on one occasion, where Brown may have told Sergeant Saultell about an issue in the showers, and Sergeant Saultell responded by telling Brown to file a grievance on the issue. (ECF No. 60, ¶ 71.) Brown acknowledges that Sergeant Saultell's instruction to file a grievance was the proper response. (*Id.,* ¶ 72.)

Brown alleges that he complained to CO Bardecki about bugs and that, in response, Bardecki gave him disinfectant. (ECF No. 60, ¶ 74.) Brown also complained to Bardecki about dirt on the ceiling and Bardecki instructed him to file a grievance. (*Id.,* ¶ 75.) Brown acknowledges that Bardecki's instruction to file a grievance was the proper response because inmates cannot clean the ceiling. (*Id.,* ¶ 76.)

Brown sometimes complained to CO Schmidt about the day room being dirty, and Schmidt allowed him access to cleaning supplies, albeit not always at the moment Brown wanted them. (ECF No. 60, ¶ 77.) When Brown complained to Schmidt about the showers being dirty, Schmidt told Brown that, per jail policy, inmate workers were responsible for cleaning the showers at night. (*Id.,* ¶ 78.)

Brown complained to CO Phillips about the ventilation system and dirt on the ceiling. (ECF No. 60, ¶ 79.) Phillips responded by telling Brown to file a grievance because inmates could not clean the ceiling. (*Id.,* ¶ 80.) Brown also believes that Phillips attempted to contact maintenance to inspect the vents. (*Id.,* ¶ 81.)

9

### 4. Brown's Use of Cleaning Procedures and the Grievance System

Brown understood the cleaning policies at the jail and that inmates had a responsibility for cleaning their own living areas. (ECF No. 60, ¶ 82.) Brown cleaned "[p]retty much any area that I could reach" with the cleaning supplies provided. (*Id.,* ¶ 84.) Brown was able to clean throughout the day and would wipe down tables, clean the day room, and clean his cell. (*Id.,* ¶ 85.)

Brown was aware that the jail had a complaint policy in place while he was at the jail. (ECF No. 60, ¶ 86.) He used the grievance process throughout his time at the jail. (*Id.*, ¶87.) Brown filed four complaints regarding dirt and dust at the jail. (*Id.,* ¶ 88.) In response to these complaints, Brown was told to notify his housing officer, as maintenance requests must go through that person under jail policy. (*Id.,* ¶ 89.) Additionally, Brown filed two complaints regarding bugs. (*Id.,* ¶ 90.) In response to these complaints Brown was told that maintenance had been notified. (*Id.,* ¶ 91.) The logbook notes that maintenance was called to B Pod twice on the day Brown submitted his first complaint about bugs and again in the days following. (*Id.,* ¶ 92.)

Brown did not file any grievances with respect to mold, mildew, or moss during his time at the jail. (ECF No. 60, ¶ 93.)

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home*

10

*Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact,

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## DISCUSSION

The defendants contend that Brown failed to exhaust his administrative remedies with respect to his claims of mold, mildew, and moss because he did not file a grievance raising those issues. (ECF No. 59 at 12-14.) The defendants further contend that they lacked personal involvement in Brown's claims. (*Id.* at 14-16.) They also contend that Brown's claims fail as matter of law under the Fourteenth

11

Amendment (while he was a pretrial detainee) and the Eighth Amendment (after his conviction). (*Id.* at 16-27.)

Brown contends that the court should enter summary judgment in his favor. (ECF No. 73 at 9.) He states that he and other inmates filed grievances regarding the hazardous conditions and that jail staff and administration did "absolutely nothing[.]" (*Id.* at 2.) Brown states that cleaning supplies were dispensed at the officers' discretion and that there was no consistency regarding the availability or access to the supplies. (*Id.* at 3.) He says that the inmate cleaning crew did not have a checklist to complete, jail staff did not inspect their work, and that they usually only cleaned for about ten minutes out of the hour they had to clean. (*Id.*) Brown says that jail staff and administration are given notice before annual inspections and that prior to the inspection was the only time "any discernable attempt was made to keep the Jail facility at a reasonable level of hygienic detail." (*Id.*) Brown states that the bug/insect infestation was and is common knowledge to staff and administration. (*Id.* at 6.) He says that the fact that meals are served in an area where dirt and debris fall freely from ceiling vents and tiles while insects buzz and swarm is not acceptable, even in an uncivilized world. (*Id.* at 7.) Brown says that he and the former plaintiffs exhausted all of their available administrative remedies. (*Id.*)

Brown also states that he has been diagnosed with PTSD directly related to the issues he encountered at the jail. (*Id.* at 5.) He submitted "Psychological Notes" from a December 11, 2019, "PSU Clinical Contact" at Redgranite Correctional Institution, where he is currently incarcerated. (ECF No. 73-3.) This document, which

12

is not certified or authenticated, *see* Fed. R. Evid. 901, states that Brown was diagnosed with PTSD related to a previous PREA (Prison Rape Elimination Act) complaint: "It would appear that Inmate's anxiety related to perceived cleanliness (or lack thereof) has become enmeshed with his psychological response to the PREA incident so that the two have become amalgamated into a singular traumatic event that conceptualizes as 'County.'" (ECF No. 73-3 at 1.)

In his reply Brown contends that jail policy shows that the jail's administrative staff, including supervisors and sergeants, are required to inspect areas in need of cleaning and respond to grievances. (ECF No. 80 at 1-2.) Brown contends that jail policy therefore shows that he correctly named jail administrative staff and supervisors as defendants. (*Id.*)

### A. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act states that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Hernandez v. Dart*, 814 F.3d 836, 841-42 (7th Cir. 2016). Exhaustion of available administrative remedies "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)).

The jail requires inmates to file grievances using their own account on the kiosk located on their unit. Brown filed four grievances raising the issue of dirt and

13

dust in the jail and two grievances raising the issue of bugs, but he did not file a grievance raising the issue of mold, moss, and mildew. Brown says that other inmates filed grievances raising this issue and he includes a grievance that former plaintiff Skotzke submitted raising the issue of mold, moss, and mildew in the showers. (ECF No. 73-2 at 1.) But the fact that another inmate may have exhausted *his* administrative remedies does not mean that Brown exhausted his own administrative remedies. Because Brown did not submit a grievance about alleged mold, moss, or mildew, he failed to exhaust his available administrative remedies on that issue. Thus, his claim raising that issue is dismissed. *See Pozo*, 286 F.3d at 1025 (To satisfy the exhaustion requirement, "a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require.").

### B. Conditions of Confinement

While he was at the jail Brown was initially a pretrial detainee and, once convicted, a convicted prisoner. Brown's claims during the period he was a pretrial detainee are analyzed under the Fourteenth Amendment. *See Hardeman v. Curran*, 933 F.3d 816, 821-22 (7th Cir. 2019) (citing *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015)). His claims during the period he was a convicted prisoner arise under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994).

To succeed on a claim under the Fourteenth Amendment Brown must show that that the defendants acted "with purposeful, knowing, or reckless disregard of the consequences" of their actions. *Miranda v. Cty. of Lake*, 900 F.3d 335, 354 (7th Cir. 2018). It is not enough to show they acted with negligence or even gross negligence.

14

*See Williams v. Ortiz*, 937 F.3d 936, 942 (7th Cir. 2019) (citing *McCann v. Ogle Cty.*, 909 F.3d 881, 886 (7th Cir. 2018)). Brown also must show that the conditions of his confinement were objectively unreasonable; that is, he must show that the conditions were not "'rationally related to a legitimate non-punitive governmental purpose'" or that they were "'excessive in relation to that purpose.'" *Hardeman*, 933 F.3d at 822 (citing *Kingsley*, 135 S. Ct. at 2473). The court must "focus on the totality of facts and circumstances" that the defendants faced and "gauge objectively—without regard to any subjective belief held by the individual—whether the response was reasonable." *Williams*, 937 F.3d at 942. Thus, to prevail on his claim that the conditions of confinement violated his constitutional rights as a pretrial detainee, Brown must prove: (1) the conditions in question were objectively serious; (2) the defendants acted purposefully, knowingly, or recklessly with respect to the consequences of their actions; and (3) the defendants' actions were objectively unreasonable – that is, "not rationally related to a legitimate governmental objective or . . . excessive in relation to that purpose." *Kingsley*, 135 S. Ct. at 2473-74.

Brown describes the jail as having dead flies and overhead dirt in the lights above the tables in the day room where inmates ate their meals. He says that sometimes the dead bugs would fall from the overhead lights onto the table while he was eating. These conditions are a far cry from conditions that courts have found to be objectively unreasonable. *See, e.g., White v. Monohan*, 326 F. App'x 385, 388 (7th Cir. 2009) (unpublished) (though a "close case," plaintiff stated claim where he alleged that bugs, cockroaches, spiders, wasps, and bees bit and stung him so often that he

15

sustained permanent injuries, including scars, wounds, sores, and internal injuries); *Sain v. Wood*, 512 F.3d 886, 894 (7th Cir. 2008) (holding that "a prolonged pest infestation, specifically a significant infestation of cockroaches and mice, may be considered a deprivation" of constitutional magnitude); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (plaintiff's allegations that cockroaches "were 'everywhere,' 'crawling on his body' (along with mice) and 'constantly awaken[ing]' him, and 'causing the environment to be unsanitary'" stated a cognizable claim under 42 U.S.C. § 1983); *Gray v. Hardy*, 826 F.3d 1000, 1007 (7th Cir. 2016) (plaintiff's evidence of filthy living conditions, an alleged lack of cleaning supplies, and prolonged pest infestation in his cell "present[ed] triable issues of fact for a jury [to] determine the degree of both physical and psychological harm he suffered as a result of the infestations and dirt"); *Byrd v. Hobart*, 761 F. App'x 621, 624 (7th Cir. 2019) (summary judgment for defendants reversed where inmate had provided evidence that prison kitchen was so overrun with mice and cockroaches as to create an unsanitary environment that presented a substantial and obvious risk of foodborne illness or worse); *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985)) (approving district court's determination that prison kitchen, commissary, and food storage areas were unsanitary because they were infested with mice and roaches, among other conditions, as well as the lower court's issuance of a general directive requiring that the kitchen be maintained to provide inmates with safe, sanitary and nutritious food); *see also Smith v. Dart*, 803 F.3d 304, 312 (7th Cir. 2015) (pretrial detainee failed to

16

allege harm stemming from presence of spider nests, cockroaches, and mice in the Cook County Jail, and thus failed to state a claim under the Fourteenth Amendment).

Brown also says that the vents blew dirty air that discolored the ceiling tiles and covered surfaces in dust. The Seventh Circuit has "continually espoused a prisoner's right to adequate ventilation." *Bd. v. Farnham*, 394 F.3d 469, 487 (7th Cir. 2005); *Martin v. Tyson*, 845 F.2d 1451, 1456 (7th Cir. 1988); *Shelby Cnty. v. Westlake*, 798 F.2d 1085, 1087 (7th Cir. 1986). When a plaintiff alleges "direct physical manifestation of the harm caused by the poor ventilation, as well as the quite likely possibility for future health problems," he has satisfied the objective prong of a constitutional violation. *Farnham*, 394 F.3d at 486. In *Farnham*, state prison inmates alleged that their jail's heating and air flow system "issued a constant flow of black fiberglass dust" that caused frequent nosebleeds and exacerbated one of the plaintiff's pre-existing asthma. *Id.* at 473, 475. On appeal, the Seventh Circuit affirmed denial of the defendants' motion for summary judgment and held that such allegations were "sufficient to constitute an objectively serious harm" under the Eighth Amendment. *Id.* at 486.

Brown has not submitted evidence showing that the alleged dirty air blowing from the vents was harmful or caused him harm. Moreover, it is undisputed that the jail has all vents cleaned and air filters changed semi-annually. When the filters are changed, the filter unit, including filter and pre-filter, are cleaned. It is undisputed that, to assist with pest control, the jail requires inmates to keep their cells clean and provides them with cleaning supplies, available on the unit before 3:00 p.m. and

17

available by request after 3:00 p.m. Brown was allowed to sweep the floors, wipe down fixtures, and otherwise clean any alleged dirt and dust. The jail also has inmate workers clean the common areas every night and after every meal. In addition, the jail has a contract with exterminator Wil-Kil for pest control on a bi-weekly basis. Based on the above-described conditions, the case law, and the jail's cleaning and maintenance policies, Brown cannot show that he experienced objectively serious conditions at the jail.

Even if Brown had established an objectively serious condition, he has not shown that the defendants acted unreasonably. For starters, Brown acknowledges that he sued defendants Picknell, Williams, Delaney, and Sawyers only because he learned that they represent the jail's administration. But Brown cannot hold these defendants liable merely because of their supervisory positions. Under § 1983, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* To be held liable under 42 U.S.C. § 1983, the supervisor "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). Because Brown has offered no evidence that Picknell, Williams, Delaney, or Sawyers were aware of his grievances, let alone any evidence that they acted unreasonably in response to any such grievances, he has no § 1983 claim against them.

18

Nor is there any evidence that defendants Sax or Craig were aware of Brown's complaints or that they had any interaction with him when he was at the jail. Thus, they cannot be liable to him under § 1983. *See Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (To establish liability under § 1983, however, "[t]he plaintiff must demonstrate a causal connection between (1) the sued officials and (2) the alleged misconduct.").

Regarding the remaining defendants, Brown says that he may have complained to Saultell on one occasion and, if he did, Saultell told him to file a grievance. When Brown complained to Bardecki about dirt on the ceiling, Bardecki gave Brown disinfectant and told him to submit a grievance. When Brown complained to Schmidt about dirty showers (Brown's unexhausted claim), Schmidt provided him with cleaning supplies and told him that inmate workers would clean the showers. And when Brown complained to Phillips about the ventilation, Phillips called maintenance and told Brown to submit a grievance. A reasonable factfinder could not conclude that these defendants acted with reckless disregard to Brown's complaints.

Because Brown's claims fail under the Fourteenth Amendment's objective standard, they must also fail under the Eighth Amendment's more strenuous deliberate indifference standard. *See Farmer*, 511 U.S. at 834-35.

**THEREFORE, IT IS ORDERED** that the defendants' motion for summary judgment (ECF No. 58) is **GRANTED**.

**IT IS FURTHER ORDERED** that Brown's motion for summary judgment (ECF No. 73) is **DENIED**.

19

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment dismissing this case.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 30 days of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within 28 days of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 3rd day of September, 2020.

WILLIAM E. DUFFIN
U.S. Magistrate Judge

20

Case 2:18-cv-01653-WED   Filed 09/03/20   Page 20 of 20   Document 83